## AMERICAN TIN PLATE CO. v. SMITH.

(Circuit Court of Appeals, Third Circuit. January 30, 1906.)

### No. 56.

MASTER AND SERVANT—ACTION FOR INJURY TO SERVANT—INSTRUCTIONS.

> Plaintiff was an employé of defendant, and was sent with other workmen to drill holes in a large I beam, which ran along one side of defendant's shop, 20 or 25 feet from the floor, and supported one of the tracks upon which a traveling crane was moved. The beam was supported on iron posts which extended up on one side of it to the roof. Plaintiff was told to reach the scaffold on which he was to work by climbing one of the posts and walking along on the beam, which was

done by walking on the projection of the lower flange, holding to the top of the beam, which was about four feet deep. When coming down from the scaffold in the same manner, as plaintiff had reached the post and was about to descend, his arm, which was still across the top of the beam, was run over and crushed by the wheel of the crane, which approached from behind him. In an action to recover for the injury plaintiff alleged two grounds of negligence: First, in failing to furnish a ladder to reach the scaffold, as requested; and, second, in running the crane upon him without warning. Defendant pleaded assumption of risk and contributory negligence. *Held,* that it was error to submit the case to the jury on the issues made on the first ground of negligence alleged alone; that in consenting to use the post as a means of reaching the scaffold plaintiff assumed the ordinary risks incident to such method, which were obvious; and that his right of recovery, if any, rested upon the second ground alleged.

[Ed. Note.—Assumption of risk incident to employment, see note to Chesapeake & O. R. Co. v. Hennessey, 38 C. C. A. 314.]

In Error to the Circuit Court of the United States for the Western District of Pennsylvania.

Wm. W. Wishart, for plaintiff in error.
Philip Willett, for defendant in error.

Before ACHESON, DALLAS, and GRAY, Circuit Judges.

GRAY, Circuit Judge. Hunter Smith, the defendant in error the plaintiff below (hereinafter called the plaintiff), was, on the 9th day of January, 1903, and for some time prior thereto, employed by the American Tin Plate Company, the plaintiff in error and defendant below (hereinafter called the defendant), at its works in the town of Monessen, Penn., as a common laborer. He was working in what was called the "rigger gang," on new construction work. On said 9th day of January, plaintiff was ordered, by one Howard McLean, foreman of the gang in which he was working, to drill holes in an iron girder or "I" beam, the said girder being about 20 to 25 feet from the ground, running along one side of the building for its entire length, and supported at considerable intervals upon posts made of structural angle iron. A similar beam, similarly supported, ran along the other side of the building for its entire length. Across the building, stretching from "I" beam to "I" beam, was a truss construction, or crane. Each end of this truss or crane was supported upon a wheel or wheels, resting upon a single rail which ran along the top and center of the flange of each "I" beam. Upon these rails, the crane was moved from one end of the shop to the other, as its services might be required. The "I" beam was between three and four feet high, between the flanges, and the flanges were about one foot in width, extending on each side of the central portion of the beam from 4½ to 5 inches.

In the afternoon before the accident, a scaffolding had been constructed and hung from the roof, near one of these girders, upon which workmen could stand while engaged in drilling holes through the central portion or shank of the "I." The plaintiff had never, before the day of the accident, been engaged in this work, nor been called upon to go up to or upon the "I" beam. He testifies that, when

ordered up on the morning in question, he asked the foreman, McLean, for a ladder, but was told by him that there was no ladder long enough, and there was no time to piece one out, and that he was then told to climb up the nearest post, and walk along the "I" beam to the scaffolding, from which he was to work. McLean denies that any such request for a ladder was made by the plaintiff. There is testimony, to the effect that it was usual for those engaged in such work to climb up the posts and walk along the "I" beams, resting their feet on the lower flange, and holding on with their hands to the top of the beam. Plaintiff testifies that, after being told that he could not have the ladder, he climbed up the post, and made his way along the "I" beam to the scaffolding from which he was to work. Another man was working on the same scaffolding, who came up in the same way that the plaintiff did. After being there for some time, the tool with which plaintiff was working broke, and he was obliged to go down to the floor, in order to have it mended. Accordingly, he worked his way along the "I" beam, as before, with his feet, or a part of them, upon the lower flange, and his arm thrown across the top of the beam, to hold himself in position. When he reached the post, supporting the beam, and which extended upwards to the roof, he threw one arm around the post, still holding the other across the top of the beam, but preparing to remove it in order to slide down on the post to the ground. While in this position, the crane was moved along from the direction in which he had come, without his having been warned of its approach, striking the arm thrown across the girder, and crushing it and squeezing his body against the post, thus inflicting the serious injuries complained of in the action brought by plaintiff in the court below. There was testimony tending to show that, when working his way along the "I" beam, from the scaffolding to the post, his face was necessarily turned, or partly turned, away from the approaching crane; that he would have had to turn his head and look over his shoulder, in order to have seen it, and that, that would have been difficult to do, without endangering his position on the girder. It is in evidence, that no one was charged with the duty of warning those who were working on the beams, of the approach of the crane, and that the man who controlled the movement of the crane along the tracks, owing to the position of the cage in which he worked, could not conveniently see those who were on the girder.

In his declaration, the plaintiff states that the negligence charged against the defendant consists: (1) Of the failure on the part of the defendant to provide reasonable and suitable appliances upon which to ascend and descend from the girder, and refusing to furnish the plaintiff with a ladder, and ordering him to ascend to his working place by way of the post or pillar supporting the girder, knowing that that mode of ascent and descent was unsafe and dangerous. (2) In that the plaintiff, acting under the orders of the defendant, was, in the proper performance of his duty, engaged at work on said girder, and that while so engaged, a certain traveling crane, so constructed as to travel on and over said girder, on which plaintiff was working, was so negligently and carelessly operated and controlled by said

defendant, as to be permitted to run into and collide with plaintiff, whereby, etc.

McLean, the foreman of the labor gang under whom the plaintiff was working, was operating the crane at the time of the accident. The defendant requested the court to charge that, under all the evidence in the case, the verdict should be for the defendant; that McLean, both as foreman of the labor gang and as the one operating the crane, was a fellow servant with the plaintiff, and that therefore the latter could not recover in the action, and that the plaintiff was guilty of contributory negligence, in putting his arm over the track on which the electric crane ran, and in not looking before starting down the pillar, to see whether the crane was coming. The learned trial judge, in response to these requests, said that to grant them would require peremptory instructions in favor of the defendant, and he therefore refused them. The refusal as to each of these requests was made the ground for a specification of error, as to which it is not necessary to say more than that the judge was right in his refusals. The case was clearly one for submission to the jury, both as to the question of defendant's negligence, and as to that of plaintiff's contributory negligence.

We are, perhaps, not at liberty to discuss—at all events, it is unnecessary that we should—the question, whether the court was correct in affirming the fourth request of the plaintiff, as it is immaterial in the discussion of the single specification with which we are here concerned. The sixth assignment of error is as follows:

"(6) The court erred in its charge to the jury, as follows, viz.: 'Was it the duty of the employer in this case, under all the circumstances of the case, to furnish a ladder that this man says was reasonably necessary; or was it reasonable and proper and safe for the defendant company to have the man go up and down the pillar, which seemed to be the only other means of getting to and from this work? If you find that, under all the circumstances of this case, the defendant was required to furnish a ladder to get to and from this work, and that it failed to do so, then that would constitute negligence on the part of the defendant. The contention of the plaintiff is in this case that he requested such a ladder. The evidence of the defendant is that he did not. It will be for you to determine whether he did ask for any such appliance or not. Consider his interest in the outcome of this suit, his interest in telling exactly what is the truth here, and you will determine whether he did make such a request or whether he failed to make any such request and took upon himself voluntarily the risk of employment of going up and down by way of the pillar.'"

The whole charge is before us. What immediately follows the language contained in the specification is the following:

"Having determined that question of negligence, if you find there is no negligence or failure on the part of the defendant company, to furnish any appliances in that regard, you would be warranted in finding a verdict in favor of the defendant in the case. If, on the other hand, you find there was negligence in that regard, you then pass on to the next question in the case, which is that of contributory negligence on the part of the plaintiff, as is here alleged."

Except the prefatory remarks made by the learned judge, giving a general definition of "negligence," and stating that it was the duty of an employer to furnish an employé with a reasonably safe place

in which to work, and with reasonably safe tools and appliances for carrying on the work, and that among the reasonably safe appliances, would be means for getting to and from the work, we have before us, the whole charge in regard to the allegation of negligence against the defendant, and upon the charge in that respect the case was submitted to the jury.

We cannot agree that this is a correct statement of the law. Whether a ladder was asked for by the plaintiff, or not, it is undisputed that he went to his work in the way in which he was ordered, voluntarily, and thereby assumed the ordinary risks of so doing. If, as plaintiff asserts, he did ask the foreman for a ladder with which to ascend to the scaffolding, and the same was refused, the fact is only thereby emphasized, that his attention had been specially directed to this way of reaching the scaffolding before he attempted it. In and of itself, it was not especially dangerous, but was made so by conditions allowed to exist, but not necessarily appurtenant thereto. Everything that pertained to the mere climbing of the post and going along the girder to the scaffolding, was as open to the comprehension of the plaintiff as it was to the defendant, or to those under whose direction plaintiff was immediately working. The hazard of slipping or falling while climbing the post or getting from the post to the scaffolding, along the girder, was one assumed by the plaintiff, and ordinarily no liability would result therefrom to the defendant; yet, the only question of fact submitted to the jury by the learned trial judge was, whether it was the duty of the employer, under all the circumstances of the case, to furnish a ladder by which plaintiff could mount to the scaffolding, or whether it was reasonably proper and safe for the defendant company to have the man go up and down the pillar, which seemed to be the only other means of getting to and from this work.

The jury were made the judges, whether, "under all the circumstances of this case, the defendant was required to furnish a ladder to get to and from this work," and that, if in their judgment it was so required, they were told the failure to do so would constitute negligence on the part of the defendant. With great respect for the learned trial judge, we think that such instruction was unsound in law and misleading to the jury. No allusion was made by the learned judge to any other extraneous and adventitious dangers, by which the way along the girder might have been beset, and which were not within the dangers assumed by him in taking the way to the scaffolding pointed out to him by his foreman. The question for the jury was not, whether defendant was required, by his duty to plaintiff, to furnish him with a ladder with which to mount to the scaffolding, but whether, in addition to the ordinary risks assumed by plaintiff, as appertaining to the way in which he consented to go to his work, he was exposed to others not patent and unforeseen by him, from which it was the duty of defendant to protect him. Such a consideration was absolutely excluded from the minds of the jury, by the manner in which the case was submitted to them. The language last quoted in the specification of error is:

"You will determine whether he did make such a request" (that is, for the ladder) "or, whether he failed to make any such request, and took upon himself, voluntarily, the risk of employment, of going up and down by way of the pillar."

By this language, the attention of the jury is confined merely to the question, whether plaintiff requested the ladder, or not, the plain inference being that, if such request was made, defendant was liable, and if it was not made, then he voluntarily assumed the risk of going up and down the pillar to and from his work. This, to be sure, is at variance with the former part of the charge in this respect, and cannot be countenanced as a correct exposition of the law of the case, or of the duty of the jury. Unless the circumstances be very exceptional, an employer has the right to require or request his servant to conduct his business according to his own judgment, even though other methods might be safer, and, where the place provided by him for the servant to work, is free from dangers which are latent or not obvious, or he has instructed his servant expressly as to such dangers, if they exist, he has fulfilled his duty in the premises. Bethlehem Iron Co. v. Weiss, 100 Fed. 45, 40 C. C. A. 270; Tuttle v. Railway, 122 U. S. 189, 7 Sup. Ct. 1166, 30 L. Ed. 1114.

Nothing was said by the court to the jury in regard to the negligence charged in the declaration, by reason of the defendant's allowing the crane to be run upon the girders, while men might be at work upon them, without providing for a warning to be given to such workmen, of its approach. This, it seems to us, was the gravamen of the case, and of this opinion the learned trial judge seems to have been, in what he said in refusing the motion for a new trial. Whether the plaintiff knew, or ought to have known, of the approach of the crane which crushed him, or whether he was so informed as to the practice of running the crane, and that the motorman had no means of looking ahead on the girders to see who were in the way, so that he could thoroughly understand the dangers to which he was exposed, and be taken to have assumed their risks, or whether all these dangers were so obvious that, if an intelligent man failed to appreciate their risk, he did so at his own peril, was questions for the jury, with proper instructions as to the primary duty of a master to see that no latent or non-obvious dangers existed, of which the employé was not specially informed or warned at the time of undertaking his work, and with the statement that of this primary duty the master cannot relieve himself by delegating its performance to an agent or servant of whatever grade, and that negligence of the master, is never one of the risks of his employment assumed by the servant. Was any provision made by the defendant, to warn those within the danger, of the approach of the crane, and if not, was plaintiff informed that no such provision was made, and of the danger incurred thereby? Had he the right to assume that the defendant would provide for such warning, and to act accordingly? These questions were all involved in this second alleged ground of liability. The plaintiff was clearly entitled to have this ground of liability, as alleged in his declaration, considered, and defendant was equally entitled to have the ground of liability correctly stated to the

jury. For the reason that it was erroneously stated by the learned judge, the defendant should be accorded the opportunity to have the law and facts that are properly determinative of his liability, presented to the jury.

We think, therefore, that the judgment below should be reversed, and that a venire de novo should be awarded. And it is so ordered.