STATE OF IOWA et al. v. OLD COLONY TRUST CO. OF BOSTON, MASS., et al.

(Circuit Court of Appeals, Eighth Circuit.   April 1, 1914.)

1. RAILROADS (§ 214*)—DUTY TO OPERATE ROAD—ABANDONMENT OF BRANCH OR CONNECTING LINE.

    While as a general rule it is the duty of a railroad company to maintain its entire line of road in a reasonably safe and operative condition, and to operate the same, there may be conditions which will excuse the full performance of this duty, and justify the abandonment of a branch or connecting line which cannot be operated without great loss and for which there is no great public necessity.

    [Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 711, 712; Dec. Dig. § 214.*]

2. RAILROADS (§ 215*)—DUTY TO OPERATE—RIGHT TO ABANDON BRANCH OR LATERAL LINE.

    Defendant railroad company owned and operated an electric line of road 125 miles long which was of large public importance. It also owned and operated by steam a connecting line 27 miles long which was not equipped for operation by electricity. This line was little used and there was little public necessity for its operation. It did not pay operating expenses, was in a dilapidated and dangerous condition for use, and required the expenditure of a large amount of money to rehabilitate it. Defendant was hopelessly insolvent, and a suit for foreclosure of mortgages on its property was pending in which receivers had been appointed who had operated the steam line at a large loss, and under an order of the court had tried unsuccessfully to sell the same. Neither defendant nor the receivers could obtain the money necessary to put it in safe operative condition and to require its operation by any purchaser of the entire property would seriously embarrass, if not prevent, the successful operation of the electric line. Held, that under such conditions neither defendant nor a purchaser was under the duty to continue to operate such steam line.

    [Ed. Note.—For other cases, see Railroads, Dec. Dig. § 215.*]

3. RAILROADS (§ 207*)—FORECLOSURE SUIT—JURISDICTION OF COURT TO ORDER ABANDONMENT OF PORTION OF ROAD.

    In such case the federal court in which the foreclosure suit was pending had jurisdiction in such suit, on petition of the receivers, defendant, and the creditors interested in the property, to order the receivers to abandon the steam portion of defendant's road, to dismantle the same, and sell the salvage for the benefit of the creditors.

    [Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 683, 684; Dec. Dig. § 207.*]

Appeal from the District Court of the United States for the Southern District of Iowa; Smith McPherson, Judge.

Suit in equity by the Old Colony Trust Company of Boston, Mass., and others, against the Ft. Dodge, Des Moines & Southern Railroad Company. From an order directing receivers to abandon and dismantle a portion of defendant's line of railroad, the State of Iowa and others appeal. Affirmed.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In a suit to foreclose a mortgage given by the Ft. Dodge, Des Moines & Southern Railroad Company to secure the payment of a large issue of bonds, the court below, on the petition of the receivers appointed in that case, joined in by the railroad company itself, by the Old Colony Trust Company, complainant in the foreclosure suit, and by the American Trust Company, an intervener in that suit and trustee in a second or junior mortgage given by the railroad company to secure an issue of $3,500,000 of refunding bonds. on December 7, 1912, made an order directing the receivers to dismantle and abandon a stretch of about 27 miles of the road in their possession, extending from Goddard near its southeastern extremity to Des Moines Junction and to sell and dispose of the rails, ties, and other movable property constituting the roadbed along that stretch and also to sell as. an entirety so much of the line of road as lies between Colfax by way of Goddard and Newton. From this order the state of Iowa, the railroad commissioners of that state, and some individual patrons along the line of the road prosecute an appeal.

Prior to the filing of that petition, the state of Iowa joined by several patrons of the road had filed a petition to compel the receivers to continue the operation of the line sought to be abandoned. The petition was heard by the court on voluminous evidence taken, and overruled. At that hearing the court found that there was not sufficient public patronage on that line to justify its continued operation, but ordered the receivers to continue its operation in a limited way for a period of four weeks, and that for a period of 90 days special efforts should be made to sell or lease the line to some party or parties who would operate it; and if neither of these expedients proved successful that an application for its abandonment would be considered. The parties seem to have acquiesced in this order. No appeal was taken from it. Neither of these expedients proved successful, and the present petition of the receivers to abandon followed.

The petition stated that the main line of road extending from Des Moines through Des Moines Junction to Rockwell City and other places had been constructed, extended, and reconstructed so as to form at the time the petition was filed a continuous connected system operated by electricity of about 125 miles; that the line extending from Des Moines Junction southeasterly to Goddard and thence to Newton had never been reconstructed like the balance of the system so as to be operated by electricity, but was operated by steam; that it was in a dilapidated and unsafe condition with ties rotten and bridges out of order; that to repair it so as to operate it by steam would require an expenditure of $125,000, and to repair and equip it for operation by electricity would require an additional amount of $275,000; that the receivers had no money and no means for raising the money for either such purpose; that there were few patrons only residing or doing business on this steam line that could not be accommodated by other lines of road constructed and operated in that region; that there was little public necessity for the operation of this line; and that the attempt to do so would imperil the successful operation of the balance of the system for which there was a great public necessity.

The petition stated that a part of this line located near its southeastern extremity extending from Colfax to Newton by way of Goddard, a distance of about 14 miles, was by reason of the fact that it could be used as a connection between a Des Moines interurban line and Newton, of some value above its junk or dismantled value, and might be sold for its reasonable value to the interurban line.

The prayer was that the petitioners might be authorized to dismantle and abandon the line of road between Des Moines Junction and Goddard and dispose of the salvage as best they could and that they might be authorized to sell the short line between Colfax, via Goddard and Newton, and that the court would order a proper and equitable disposition of the proceeds of such sales. There was also a prayer for general relief.

The state of Iowa by its Attorney General and the railroad commissioners

of that state and some residents along the line sought to be abandoned, intervened and joined issue with the petitioners on the averments of the petition and pleaded affirmatively that there was an implied contract between the state and the original railroad company which constructed the line of road sought to be abandoned, that it should be perpetually operated, and that on the assurance that it would be perpetually operated certain persons had made donations and subscriptions for the construction of the road, and for that reason estoppel arose against its abandonment.

The issues so joined were submitted to the court "on the evidence and on the argument of counsel"; but no such evidence is preserved in the record. We therefore cannot enter upon any original consideration of the testimony introduced before the trial court. All we have are the pleadings and facts found and incorporated in the order and decree of December 7, 1912, appealed from in this case.

The question therefore is whether on the pleadings and facts found the District Court erred in ordering the dismantling and abandonment and the sale and disposition respectively of the two portions of the line in question.

The decree discloses the following facts: On June 4, 1910, when the foreclosure suit was instituted, the Ft. Dodge, Des Moines & Southern Railroad Company was hopelessly insolvent. There were then outstanding bonds secured by the mortgage being foreclosed amounting to $3,500,000 in face value. There had been expended by the Ft. Dodge, Des Moines & Southern Railroad Company and the Newton & Northwestern Railroad Company, its predecessor, in the way of construction and reconstruction of the system of road, the aggregate sum of $5,146,189. There never had been net earnings available to pay interest on the mortgage debt or any return on the investment. Under orders of the court efforts had been made by the receivers and by Robert Ryan, one of the attorneys of patrons of the road residing along its line who had been appointed special master for that purpose, to sell, lease, or otherwise dispose of the line of road sought to be abandoned to some person or company that would operate it, but such efforts had proven ineffectual.

The decree then in the language of the trial court proceeds as follows:

"The court finds that the line of road from Des Moines Junction to Newton, and the line from Colfax to Goddard, is in a very dilapidated condition, and, not being operated, it is impossible to care for same, and the same is in a much more dilapidated and run down condition than it was at the commencement of this foreclosure proceeding, and such line of road is rapidly depreciating in value; that the bridges need rebuilding, the tracks need reconstruction and new ties, and it would be dangerous and impossible to operate said line of road in its present condition. The court further finds: That the said Ft. Dodge, Des Moines & Southern Railroad Company and its receivers have no equipment, motive power, or rolling stock with which such line of road could be operated. * * * That the portion of the line sought to be abandoned could not be safely operated without being rebuilt or reconstructed, and to rebuild and reconstruct this line of road, so that same could be operated by steam, with reasonable safety, would require an expenditure of at least $126,000, that, if the said line of road above described was electrically equipped, so that same could be operated with electricity, as the balance of the line of the Ft. Dodge, Des Moines & Southern Railroad is operated, it would require an additional expenditure of at least $147,000, making the financial outlay necessary to electrically equip the said line of road from Des Moines Junction to Newton, with the branch from Colfax to Goddard, in excess of $273,000. That the receivers of the Ft. Dodge, Des Moines & Southern Railroad Company, and the said railroad company, are wholly without means or credit to so reconstruct and rehabilitate said line of road.

"The court further finds that during the ten months from January 1 to November 1, 1910, while the said line of road from Des Moines Junction to Newton, a distance of 37 miles, was being operated, the gross earnings for

such period were $25,266.45 less than the operating expenses, and in this deficit of operation expenses over gross earnings there was not included any charge for the maintenance of locomotives or freight cars, nor was there included any item of interest or general depreciation of the property. The court finds that at this time the said Ft. Dodge, Des Moines & Southern Railroad Company is wholly insolvent; that there is outstanding, in bonds secured by the first mortgage, held by the Old Colony Trust Company, complainant herein, $3,500,000 with accrued interest; that there are outstanding bonds, secured by second mortgage, held by the American Trust Company, intervener, in the aggregate sum of $2,773,900 with accrued interest, and, in addition to these amounts, there are obligations of the receivers, issued and incurred in this foreclosure proceeding, and used in the reconstruction and preservation of the electrically operated portion of said road, in excess of $800,000; that the said Ft. Dodge, Des Moines & Southern Railroad Company, and its receivers, are wholly without means with which to equip, reconstruct, and operate the portion of the line of road sought to be abandoned, and are without ability or credit to raise a sum sufficient to operate same.

"The court further finds that the portion of the railroad sought to be abandoned will not pay its mere operating expenses; that the public patronage and the interest of the public in such line is not sufficient to justify the operation of same; that, in effect, the present condition of the said Ft. Dodge, Des Moines & Southern Railroad presents two systems of railroad, one operated by electricity and the portion sought to be abandoned, which has been heretofore operated by steam; that the revenues of the entire line of said road would not justify the reconstruction and operation of that portion of the road sought to be abandoned; that the present line of road, as now operated by electricity, consists of about 125 miles of main line; that the continued operation of said electric line is of large public interest to the citizens of the state of Iowa; that, as at present operated, said electric line gives frequent service between the important cities of Des Moines, Ames, Boone, Ft. Dodge, and Rockwell City, and serves a populous portion of the state of Iowa; that up to this time there have been no net earnings on such electric line, in excess of the requirements of operation and proper maintenance, and the court finds that if it should compel the receivers, or subsequent purchasers of the line sought to be abandoned, to operate same, it would seriously embarrass if not prevent the successful operation of the entire line of road, and would prevent the reorganization of the said electric line of road, and any effort made to place same in a solvent and prosperous condition.

"The court further finds that the line of road from Des Moines Junction in Story county, Iowa, to Goddard, in Jasper county, Iowa, a distance of some 27 miles, should be permanently abandoned, and that the receivers, subject to the terms and conditions hereinafter described, should be and are hereby authorized to permanently remove and dispose of, for the benefit of the parties interested herein, all the salvage and property upon said line.

"The court further finds that the said line of road from Colfax, in Jasper county, Iowa, to Newton via Goddard, in Jasper county, Iowa, a distance of some 14 miles, should, if possible, be disposed of to some person or corporation which will operate same, and that, under the terms and conditions hereinafter expressed, the receivers should be and are hereby authorized and empowered to so dispose of said line of road."

Then follows the order and decree itself authorizing the receivers to permanently abandon the line of road extending between Des Moines Junction and Goddard and dispose of its rails, ties, spikes, switches, station houses, platforms, and property of every kind and description, save and except the right of way, and authorizing the receivers to sell as an entirety so much of the line of road as lies between Colfax and Newton, via Goddard, all subject to the approval of the court.

The court then reserved jurisdiction to make such orders as to the disposition of the proceeds of sale as might seem right.

For a clear apprehension of the physical facts of the case, a blueprint · showing the location of the road sought to be abandoned and its relation to the electric system and to other roads intersecting it is here reproduced:

Robert Ryan, of Des Moines, Iowa (F. G. Ryan, of Des Moines, Iowa, on the brief), for appellants.

George Cosson, of Des Moines, Iowa, for appellants State of Iowa and for Railroad Commissioners of Iowa.

James C. Davis, of Des Moines, Iowa (S. R. Dyer, of Boone, Iowa, and Currier, Rollins, Young & Pillsbury, of Boston, Mass., on the brief), for appellees.

Before HOOK, ADAMS, and SMITH, Circuit Judges.

ADAMS, Circuit Judge (after stating the facts as above). Some general criticism of the proceedings in the foreclosure suit, of the management of the road by the receivers, of the issue of receivers' certificates for $800,000, and the expenditure of that amount of money in the improvement or operation of the main line, hereinafter sometimes referred to as "the electric line" instead of upon the line sought to be abandoned, hereinafter sometimes referred to as "the steam line," was indulged by counsel for appellant in their argument, but in their brief they reduce the questions for our consideration to a narrow compass. At the outset they disclaim any intention of seeking a review of (1) the order appointing the receivers, or continuing them in the operation of the road, (2) or of the order allowing the receivers to cease operation of the steam line pending the foreclosure proceeding, (3) or of the order authorizing the issue of receivers' certificates, (4) or of

the finding that the operation of the steam line had been at a loss. Two propositions only are argued in their brief: (1) That the District Court was without power or jurisdiction in the foreclosure suit to order an abandonment of the steam line; (2) that the law imposed upon the railroad company as a consideration for the rights, privileges, and franchises granted to it by the state the duty of continuously furnishing adequate service to the public throughout its entire line even if a pecuniary loss should be sustained thereby.

It will be convenient to consider these propositions in the reverse order in which they are stated.

In view of the pleadings and record in this cause and of the disclaimer of counsel, we are relieved from any consideration of the causes which brought the steam line into the physical condition disclosed by the record, and for the purpose of determining whether the court below erred in ordering that line abandoned we must view its condition as it stood at the time of the hearing in the trial court, and, inasmuch as there is no evidence preserved in the record relating to that condition, we must take the facts disclosed by the pleadings and the findings of the trial court as expressed in its final order of December 7, 1912, authorizing the abandonment, to be true. They are stated with much detail in the preceding statement of facts but may be summarized as follows: The short stretch of road sought to be abandoned is equipped for operation by steam only, while the balance or main part of the system is equipped for operation by electricity; there is little public necessity for the continued operation of the steam line; it is in a wretched physical condition, unfit and dangerous for use and requiring the expenditure of a large amount of money to rehabilitate it; the railroad itself is hopelessly insolvent; neither it nor the receivers have money or means for raising money requisite for such a rehabilitation; the continued operation of the main or electric line is of large public importance; the steam line in and by itself does not pay its operating expenses, and to compel the receivers or any subsequent purchasers of the property to operate it would seriously embarrass if not prevent the successful operation of the electric line; the revenues of the entire line of road do not justify the reconstruction and operation of the portion of it sought to be abandoned.

[1, 2] A railroad corporation is in an important sense a public corporation. It is dependent upon the public for its franchises to exist and carry on business, and in consideration of these franchises it assumes and must perform certain duties and obligations for the benefit of the public. Among them, as a general rule, is the duty of maintaining its entire line of road in a reasonably safe and operative condition and for a fair consideration to carry passengers and freight over it at all reasonable times whenever requested to do so. These propositions are elemental and lay down a general rule which cannot be gainsaid or denied. But there are some conditions which necessarily excuse full compliance with the requirements of these rules and, in our opinion, the present case affords a striking example of such conditions. Here is a case where the line sought to be abandoned is not only not self-supporting, but its continued operation jeopards the

successful operation of the entire ystem of which it is merely a part. Moreover, its continued operation in its present condition is dangerous to life and property and there is no money or financial ability to improve its condition. Not only so, but there is little public necessity for its continued operation, whereas, there is a great public necessity for the continued operation of the balance of the system.

In such circumstances the railroad company may abandon such an unprofitable and irreclaimable part of its road and neither the state nor unfortunate investors along the line can justly complain. They cannot force a railroad company to do the impossible. Jack v Williams (C. C.) 113 Fed. 823; Id., 76 C. C A. 165, 145 Fed. 281; Commonwealth v. Fitchburg Railroad Co 12 Gray (Mass.) 180; People v. Albany & Vermont Railroad Co, 24 N. Y. 261 82 Am. Dec 295; Morawetz on Private Corporations, § 1119 The principles announced in these cases seem especially applicable to railroads organized under and subject to the laws of the state of Iowa. In that state authority is directly conferred to change or remove a line of road after it has been permanently located and constructed. Such is the declared public policy of the state. Sections 2092–2098, Iowa Code 1897. This statute is invoked for another purpose presently to be considered, and reference is now made to it only for the purpose of disclosing the policy of the state of Iowa, which, it is thought, is in essential harmony with the right to abandon a line of road under certain conditions.

On the assumption that the receivers and other petitioners base their petition to abandon upon the provisions of sections 2092 to 2098 of the Code of Iowa, counsel for appellants construct an argument of this kind; that, as these sections provide that any railroad company, desiring "to change or remove" a line of its road after the same has been permanently located, may file a petition "in the district court in any county wherein the change or removal is proposed to be made," and, after giving a certain specified public notice of the filing of such petition, may secure the relief contemplated by the statute, the proceeding is a special one and the district court of the state is a special tribunal designated for administering that relief and is the only tribunal authorized to do so.

Moreover, they contend that authority to "abandon" a part of a line of a road is not comprehended within the language "to relocate, change or remove," and, as a result, that the District Court of the United States has no jurisdiction over the present inquiry.

While the petitioners, after setting forth with much detail the facts already referred to, touching the inability of the receivers or of the railroad company to rehabilitate and operate the steam line and other conditions already referred to, which in their opinion rendered the abandonment of the steam line advisable, pray for leave to proceed under and in accordance with the Iowa statute, they also pray for such other and further relief as the facts justify and to equity and good conscience belong.

We have already seen that on a state of facts such as disclosed by the pleadings and proof in this case any railroad company would have been justified on general principles of the common law in abandoning

a part of its road in similar condition to that sought to be abandoned in this case, and without doubt could have received judicial sanction for such abandonment at common law irrespective of any statute. The prayer for general relief in this case is quite sufficient to enable the court to grant all proper relief whether the right be based on statute or common law.

But it is earnestly contended that receivers placed in the custody of railroad property pending foreclosure proceedings cannot initiate proceedings for abandonment, and that the court itself, in a foreclosure suit, the main purpose of which is to enforce the lien of a mortgage, had no jurisdiction to order such abandonment. In the first place, the receivers were not the only parties moving for the abandonment. They did not alone initiate this proceeding. The railroad company itself, the Old Colony Trust Company, which represented the bondholders secured by the first mortgage, and the American Trust Company, which represented bondholders secured by the second mortgage, joined the receivers in their petition to abandon. All the actual and contingent interests in the property, therefore, desired the abandonment of the line in question and prayed the court to order it.

[3] Did the court have jurisdiction in the foreclosure suit to grant the relief prayed for?

The road including the electric line and the steam line were in custodia legis to be cared for and preserved for the best interests of all concerned. The electric line 125 miles in length constituted in itself a system of considerable importance, both to the owners and to the public at large, and was in a fair operative condition; the steam line was short, of some but comparatively little public importance, was in a dilapidated, worn-out condition, unfit and unsafe for operation; no money was available for its restoration, and its operation in its then condition would have imperiled the successful operation of the more important electric system; all reasonable efforts had been exhausted to secure such a lease, sale, or other disposition of the steam line as would result in its continued operation, and these had proved unavailing; efforts had been made to operate the line in a limited way to serve the convenience of the comparatively few interested patrons; neither the parties to the suit nor others interested had taken any steps to secure a sale of the entire road, electric and steam, so as to bring about an operative reorganization of it. In these circumstances, what could the court charged with the duty of caring for and protecting the whole property have done except order the abandonment of the steam line and the sale of its salvage? It certainly could not have ordered its restoration without any money or means for raising money to defray its costs. It could not have continued to operate it and endanger the lives and property of unfortunate patrons. It ought not to have done any of these things for the convenience of a few patrons only, when by so doing it would have imperiled the successful operation of the electric line and inconvenienced many patrons. We think the court not only had the power to make the order complained of in the foreclosure suit, but that its exercise under all the facts and conditions of this case was wise and for the best interests of all concerned.

As the stretch of road extending 14 miles between Colfax and Newton via Goddard was in an inoperative and irreclaimable condition, its sale to some connecting line that might reclaim and operate it was the most reasonable disposition that could have been made of it, and, as counsel for appellants make no special complaint against that part of the order appealed from, either in their argument or brief, we shall refrain from any further consideration of it.

The decree of the District Court is affirmed.