## CHARLESTON-ISLE OF PALMS TRACTION CO. v. SHEALY et al.

### (District Court, E. D. South Carolina. June 29, 1920.)

### No. 207.

1. **Carriers ⬅12(9)—Law fixing maximum rates part of franchise.**
   Where the law at the time a railroad company is chartered fixes maximum rates which the company may charge, that law enters into and becomes a part of its franchise, and it is not authorized to exceed such rates, because under them it cannot operate, except at a loss.

2. **Carriers ⬅12(5)—Public service corporation not required to operate at continuing loss.**
   The public cannot require of a public service corporation the continued operation of its property under rates which would afford, not only no adequate return on the capital invested, but would entail a large continuing loss and the eventual exhaustion of the entire capital.

In Equity. Suit by the Charleston-Isle of Palms Traction Company against Frank M. Shealy, James Cansler, and H. H. Arnold, constituting the Railroad Commission of South Carolina, S. M. Wolfe, Attorney General of South Carolina, and others. Decree for complainant.

M. Rutledge Rivers, of Charleston, S. C., for complainant.

S. M. Wolfe, Atty. Gen., A. M. Lumpkin, of Columbia, S. C., and B. A. Hagood and Lee Royall, both of Charleston, S. C., for defendants.

SMITH, District Judge. The original bill of complaint in this case was filed on the 18th day of March, 1919, against the defendants, the members of the Railroad Commission of South Carolina. By an order of this court filed the 15th of April, 1919, the complainant was ordered to amend the bill of complaint by suitable allegations, so as to make the mortgagee a party thereto, and the amended bill was filed on the 22d of April, 1919, adding as defendants the Baltimore Trust Company, the Charleston Consolidated Railway, Gas & Electric Company, and the Charleston Consolidated Railway & Lighting Company. The additional defendants having appeared duly and filed their anwers to the bill of complaint, and all the defendants having answered, the return of the Railroad Commissioners to the rule being taken and treated as their answer, and the cause being at issue, an order of reference to take the testimony was made, and the special master has filed his report, with all the testimony, and the cause was thereupon called for hearing. By a written stipulation filed on the 4th day of May, 1920, it was stipulated and agreed on behalf of all the counsel in the cause that the cause should be submitted to the court for decision without oral argument, and the cause has been by the court fully considered, upon all the papers in the cause, the testimony, and the exhibits.

From all the testimony it appears that the complainant, the Charleston-Isle of Palms Traction Company, was chartered under the laws of South Carolina on the 7th day of January, 1913. This charter was

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

issued under the provisions of article 3, chapter 47, Code of Laws of South Carolina 1912 (Statutes at Large of South Carolina, vol. 28, p. 973). Thereafter the Charleston-Isle of Palms Traction Company, by deed dated March 15, 1913, purchased from the Charleston Consolidated Railway, Gas & Electric Company and Charleston Consolidated Railway & Lighting Company certain property of the latter companies, consisting of railways and railway routes owned by the Charleston Consolidated Railway, Gas & Electric Company, and by that company leased to the Charleston Consolidated Railway & Lighting Company, and under such lease operated by the last-named company from Mt. Pleasant to the Isle of Palms, in the county of Charleston, including two ferryboats, known as the Lawrence and the Sappho, which were operated from Central Wharf, in the city of Charleston, to the wharf at the foot of Hibben street in the town of Mt. Pleasant, together with certain parcels of real estate and wharves and wharf sites, cable and pole lines, and the rights, franchises, and privileges for the transaction of business in the town of Mt. Pleasant, and also certain tools, chattels, machinery, and equipment and other personal property, all more particularly mentioned and described in the deed of conveyance which is recorded in the office of the registrar of mesne conveyances for Charleston county, in Book R, No. 26, p. 236.

This property so conveyed constituted a line of transportation from the city of Charleston to the Isle of Palms, a summer resort on the sea beach about seven miles from Charleston. The line was one formed by the conjoint service of a ferry and railroad from the city of Charleston. Passengers and freight were carried over by the ferryboats to the town of Mt. Pleasant, and were transported from the town of Mt. Pleasant by a street railway, or railroad propelled by electricity, to the Isle of Palms. The consideration of the purchase was $250,000, none of which was paid cash, but all of which was included in a bond dated March 15, 1913, from the Charleston-Isle of Palms Traction Company to the Charleston Consolidated Railway, Gas & Electric Company and the Charleston Consolidated Railway & Lighting Company, for $250,000, payable on the 15th day of February, 1918, with interest thereon at the rate of 5 per cent. per annum, payable semiannually, which bond was secured by a mortgage of even date covering all the purchased property.

At the time of the sale of this property it was included in a mortgage from the Charleston Consolidated Railway, Gas & Electric Company to the Baltimore Trust & Guarantee Company, trustee, dated February 23, 1899. The Baltimore Trust & Guarantee Company, trustee, was the mortgagee under this mortgage for a large amount, which covered all of the property of the Charleston Consolidated Railway, Gas & Electric Company, which mortgage contained a provision that the mortgagee could at the request of the mortgagor, for a consideration, release parts of the mortgaged property. The Baltimore Trust Company became the successor as trustee of the Baltimore Trust & Guarantee Company. The Charleston Consolidated Railway & Lighting Company had leased this property from the Charleston Consolidated Railway, Gas & Electric Company, and by an act of the General

Assembly of the state of South Carolina, approved February 12, 1913 (28 Stat. p. 3), the Charleston Consolidated Railway, Gas & Electric Company was authorized and empowered to sell, assign, transfer, and convey the property above described as sold to the Charleston-Isle of Palms Traction Company. In the sale to the Charleston-Isle of Palms Traction Company, the mortgagee, the Baltimore Trust company, as trustee, agreed that upon the payment of the sum of $250,000, which the Charleston Consolidated Railway & Lighting Company undertook and agreed, when paid, to pay over to the Baltimore Trust Company, as trustee, that the Baltimore Trust Company, trustee, would thereupon accept the same in full consideration for the properties so sold, and would thereupon release the said properties from the lien of said mortgage.

It appears from the testimony that the property so sold, and which had been operated by the Charleston Consolidated Railway & Lighting Company (being known as that portion of its property called the Seashore Division of said company), and formerly constituting the Charleston & Seashore Railroad, has been operated always at a loss. The new purchaser, the Charleston-Isle of Palms Traction Company, went into possession and proceeded to operate the property, and has operated it ever since, but under the testimony it has been operated and is still continuing to be operated by them at a large annual loss; that is to say, the evidence shows that the receipts from operation are wholly insufficient to pay the costs of operation, including therein the costs of proper maintenance. In addition thereto, interest has been paid in part only upon its first mortgage, and it appears that the complainant, Charleston-Isle of Palms Traction Company, in 1916, borrowed in cash from the Charleston Consolidated Railway & Lighting Company the further sum of $17,000, and executed for it its bond in that amount, payable one year from said date, with interest at 6 per cent. per annum, and secured the same by a second mortgage of the property. This second mortgage is now due and payable, and no interest has been paid thereon; so that there is due to the Charleston Consolidated Railway & Lighting Company the principal of the two mortgages, with accumulated interest, together with sundry accounts and interest on unpaid accounts for electric current, an amount aggregating on May 1, 1919, the sum of $321,031.50, and on May 1, 1920, the total sum of $332,162.17.

After careful consideration of the whole testimony, the court concludes and finds as a conclusion of fact that the property has been and is now being operated at an annual loss. Not only can no dividends be paid upon the stock, nor interest be paid upon the purchase money and other mortgages, but the actual proceeds from operation are insufficient to pay the costs of operation, together with the costs of a proper maintenance. This bill of complaint was filed by the complainant in an alternate aspect, for the purpose:

First. Of obtaining a decree of court allowing them to charge an increased rate of transportation. It appears that during the latter part of February, 1919, the defendants, who are the Railroad Commission of the state of South Carolina, advised the complainant that the rates

being then charged by them were not in accordance with the order of the said Railroad Commission, made October 2, 1918, regulating rates which could be charged by the complainant, and thereupon filed their order requiring the complainant to conform with the terms of the order of the commission numbered 172, of October 2, 1918, fixing the maximum charge the complainant could demand and receive for passengers under the law of the state, and directed the Attorney General to take proper proceedings to enforce that order.

Second. If the court held that the increased rates of compensation for the transportation of freight and passengers could not be charged, so as to reasonably insure the receipt of a sufficient income to maintain and operate the property and pay a fair return on the value of the investment, then that the complainant be permitted to cease the operation of the line, yield up its franchises and privileges, liquidate its property, and apply the proceeds to the payment of its mortgages and its other debts, and distribute any surplus among its stockholders.

The bill of complaint alleges that the property has been operated at a large financial loss, and it is impossible to continue to operate it at the rates allowed by the Railroad Commission, save at a continuing loss, and prays that the court will decree that the rates now being charged by the complainant are reasonable and proper, and absolutely necessary to enable the complainant to continue further operation of the company and obtain any result at all from the property, or that, if in the opinion of the court this relief cannot be given to the complainant, then praying that this court will permit the complainant to abandon the operation of its property and to sell its entire property, with a right to remove the same.

The answers of the lien creditors, the Charleston Consolidated Railway & Lighting Comany, the Charleston Consolidated Railway, Gas & Electric Company, and the Baltimore Trust Company, trustee, simply submit their rights to the court, asking, however, that if the court shall permit the complainants to stop the operation of the property that the same may be dismantled and sold and the proceeds applied to the liquidation, first, of the mortgaged indebtedness thereon; and, secondly, to the general creditors of the Charleston-Isle of Palms Traction Company.

The defendants the Railroad Commission of the state of South Carolina submit that the rates of compensation for the operation of a railway corporation, such as the complainant, are fixed by law and cannot be increased, whether it is sufficient to pay the costs of operation or not, and further that the complainant is under obligation to continue the operation of its property under the law, whether at a loss or not, and, if at a loss, until the whole property, whether mortgaged or nonmortgaged, be exhausted, to pay the costs of operation.

[1] The charter of the Charleston-Isle of Palms Traction Company expressly declares that it shall be entitled to all the rights, powers, and privileges, and subject to all the limitations and liabilities, of railroad corporations embraced in the general railroad law, being chapter 49, Code of Laws 1912, as well as any acts now existing or hereafter to be passed regulating the duties, privileges, and liabilities of railroad

companies. By section 3260 of the Code of Laws of South Carolina 1912, which section is a part of article 8 of chapter 49, it is provided that the rate for passengers on all railroads to which the provisions of that chapter should apply should not exceed three cents per mile for every mile traveled, and this provision of law was of force at the time that the complainant was chartered, and it purchased the property and accepted the privileges and the duties of operation.

Under the principles decided by the Supreme Court of the United States, in the case of Columbus Railway, etc., v. City of Columbus, 249 U. S. 399, 39 Sup. Ct. 349, 63 L. Ed. 669, it would appear as a conclusion of law that, where the law at the time of the chartering of a railway company declares and specifies what shall be the maximum rates that such railway so chartered shall be permitted to charge, that law enters into and is a part of the franchise, and that the company is not authorized to exceed that rate because the operation of its property may not be profitable under this maximum rate, and may exceed in loss or cost of operation what the company expects. It is found, therefore, as a conclusion of law, that the complainant is not authorized to charge a higher rate of transportation than the maximum amount allowed by section 3260 of the Code of Laws of South Carolina 1912, nor are the defendants the Railroad Commission authorized to permit it.

[2] In the case of public service corporations, however, where there is no specified contract upon the point, the public is not authorized to require the continued operation by the public service corporation of its property and franchises under rates which would afford, not only no adequate return for the capital invested, but rates which would mean a large continuing loss and the eventual exhaustion of the entire capital invested. Denver v. Denver Union Water Co., 246 U. S. 178, 38 Sup. Ct. 278, 62 L. Ed. 649; Detroit United Ry. v. Detroit, 248 U. S. 429, 39 Sup. Ct. 151, 63 L. Ed. 341. As, therefore, the evidence is that, this property can only be operated, so as to perform tne duties imposed upon the complainant by its charter, at a continuing loss, there is no power in the public under the state of facts existing in this cause to compel it. The corporation is authorized to abandon and return to the state its charter, franchises, and privileges, and to cease operations, to liquidate by realizing upon what property it may possess (excluding its franchises and public privileges), and pay the proceeds to the parties entitled to receive the same.

It is therefore ordered, adjudged, and decreed that the complainant has no right or power to continue to charge the rate of compensation charged by it at the time of the filing of the bill of complaint, or any amount in excess of that fixed by law and specified in the order of the defendant the Railroad Commission, dated October 2, 1918.

It is further ordered, adjudged, and decreed that the defendants the Charleston Consolidated Railway & Lighting Company, the Charleston Consolidated Railway, Gas & Electric Company, and the Baltimore Trust Company, trustee, have 30 days from the filing of this decree in which to apply for a decree of strict foreclosure, and to have all the mortgaged property turned over to them, with the rights, powers,

and privileges of the defendant the Charleston-Isle of Palms Traction Company to operate the same according to law.

It is further ordered, adjudged, and decreed that, if neither of the said defendants the Charleston Consolidated Railway & Lighting Company, the Charleston Consolidated Railway, Gas & Electric Company, or the Baltimore Trust Company, trustee, shall within 30 days as aforesaid apply for a decree of strict foreclosure, and to have the mortgaged property turned over to them, or either of them, or any assignee of them, or either of them, to operate as aforesaid, then any party hereto may apply for, or the court may render, a final decree, directing the complainant, Charleston-Isle of Palms Traction Company, to cease all further operations of the property, and for the appointment of a receiver to take possession of and keep all the mortgaged property of the complainant, Charleston-Isle of Palms Traction Company (excluding all its corporate and public franchises and privileges), without operating the same in any wise as a public carrier, and for a sale of all said property in such manner and in such parcels and on such terms as the court shall therein direct, and for the application of all the proceeds thereof to the costs and expenses of these proceedings and of such receivership, and then to the creditors thereto entitled.