THE CITY OF LEAD, et al., Respondents, v. WESTERN GAS & FUEL COMPANY, Appellant.

(187 N. W. 162.)

(File No. 4867. Opinion filed March 4, 1922.)

1. **Municipal Corporations—Gas Franchises, Cessation of Gas Plant Operation Before Expiration of Franchise, Whether Permissible When Concern Insolvent and Running At Loss And Rates Unascertainable—Right Recognized On Rehearing.**

Upon rehearing for sole purpose of further considering whether appellant gas company could cease operation of plant before expiration of period of respective franchises granted by respondent cities, held, that, appellant being insolvent, its plant mortgaged for full value, stockholders having for long been running it at loss, and appellant conceding that cessation of operation will terminate its franchise rights,—it had the right to cease such operation; this in view also of the former holding (44 S. D. 510, 184 N. W. 244) that the parties were powerless to contract as to rates. Court neither confirms nor denies respondents' contention that under ordinances requiring Gas Company to continuously supply gas to city inhabitants, diligently keep ready to serve all applicants, and permitting either party after twenty years from date of franchise, and on expiration of each ten years period thereafter, to require the other, on notice, to require question whether past or present rates are under existing conditions mutually fair and just, par-

ties to be bound by arbitrators' determination of question on pain (by gas company) of forfeiture of franchise,—the franchises created a contract requiring furnishing of gas for full term of grant, that constitutional limitation on municipal power to make binding contract re rates does not affect validity of franchise contracts in other respects, that under constitutional provisions and S. D. statutes, city is deemed authorized to fix and determine rates which will prevail till police power of state invoked for their correction, that adequacy of rates are not here involved, and that under the franchises cities were not limited to remedy of forfeiture; nor appellant's contention that by holding of Court in former opinion that there was no contract re rates, it necessarily held that franchise did not constitute a contract; nor its contention that ordinance provisions for forfeiture of Gas Company's rights in case of nonuser constitute sole penalty for its failure to operate plant.

2. **Same—Gas Company's Notice of Discontinuance of Operation of Plant, Whether Thirteen Days Sufficient.**

While 13 days' notice of Gas Company's intention to discontinue operation might ordinarily have been insufficient, yet when accompanied by offer to turn over plant to cities without charge to them, respondent cities may not complain of short time notice.

Whiting, J., concurring specially.

On rehearing. Former opinion and judgment adhered to.

*Rice & Wishart,* and *Adams, Follansbee, Hawley & Shorey,* for Appellant.

*E. A. Steinback,* and *Chambers Kellar,* for Respondents.

(1) To point one of the opinion, Appellant cited. Brooks-Scanlon Co. v. Railroad Commission, U. S. Sup. Ct., Advance Sheets Nos. 8 and 9, March 1st to 15th, 1920, p. 213; Cent. Bank & Trust Co. v. Cleveland, 252 Fed. 530; Union Trust Co. v. Curtis, 1915A L. R. A. 699, 705; Gilcrist v. Waycross St. & Sub. Ry., 246 Fed. 953.

Respondent cited: Secs. 3, 9, 10, 15, of Deadwood Ordinance No. 338; Sec. 4, Deadwood Ordinance No. 373; Sec. 5, Lead Ordinance No. 247; Lead Ordinance No. 326, amendatory of Ordn. 247.

GATES, P. J. We granted a rehearing in this case—

"For the purpose of considering further the sole question whether the appellant, Western Gas & Fuel Company, could cease the operation of its plant before the expiration of the period of

the respective franchises granted by the cities of Lead and Deadwood."

The former opinion appears in 44 S. D. 510, 184 N. W. 244. The respondents in their brief on rehearing call attention to the following clauses in the Deadwood ordinances (and there are similar provisions in the Lead ordinances):

"Said gas company, its successors and assigns, shall construct and at all times maintain its distributing system in first-class operating condition, and shall furnish said city and the inhabitants thereof with continuous and constant supply of gas (of certain specified quality.)"

"The grantees, their heirs or assigns, shall use reasonable diligence to keep themselves in readiness to serve any and all applicants with gas for light, heat or other purposes."·

"In consideration of the rights and privileges of this franchise, the grantees, their heirs and assigns, agree to furnish the said city and the inhabitants thereof, gas (of a certain specified quality.)"

"The grantees, their heirs or assigns, shall not be required to furnish gas to any person, body or corporation unless such person, body or corporation shall deposit with the grantees, their heirs or assigns, as security for the payment of all bills, a sum equal to the estimated charge for the consumption of gas by such person, body or corporation for a period of two months."

"This franchise shall not become operative unless the grantees, their heirs or assigns, shall file their written acceptance thereof with said council within thirty days from the date of the passage of this ordinance."

"At or subsequent to the expiration of twenty years after the approval of this ordinance and upon the expiration of each ten-year period thereafter, either the city or the grantee herein, their heirs or assigns, may by notice to the other party require the question as to whether the rates theretofore charged or existing for the price of gas are, under conditions then existing, fair and just to all parties interested; such question to be submitted to a board of three arbitrators one of whom shall be chosen by the city, one by the grantees herein, their heirs or assigns, and the third by the two arbitrators so chosen; and the decision of such arbitrators shall be binding upon all parties and a failure to comply

therewith by the grantees, their heirs, or assigns, shall be ground for forfeiture of this franchise as hereinafter provided."

"The grantees herein, their heirs and assigns, agree to furnish the said city and the inhabitants thereof, gas (of a certain specified quality) during the period of the war with Germany and for a period of eighteen months after the termination of the war with Germany by the United States of America by the signing of a treaty of peace with Germany or in any other manner by which the United States of America secures peace."

The respondents thus summarize their contentions:

"(1)   The franchises, accepted as they were, created a contract by virtue of which certain obligations were created on the part of the gas company, amongst which was the obligation to furnish gas to the cities and their inhabitants for the full term of the grant.

"(2)   The constitutional limitation upon the power of the municipality to make a binding contract as to rates does not in any degree affect the validity of the franchise contracts in other respects.   This is true under all the authorities, whatever view this court may take as to the effect to be given to the attempt of the municipality to fix and determine such rates; but

"(3)   The better reasoning and the weight of authority, we believe, supports the doctrine that, under the South Dakota constitutional provisions and the South Dakota statute conferring certain powers upon municipalities, the municipality will be deemed authorized to fix and determine the rates and such rates will prevail until the reserved police power of the state is invoked for their correction.

"(4)   The adequacy of the rates heretofore or which may hereafter be charged by the gas company is not involved in this record.   No attempt whatever has been made by the gas company to seek an adjustment of such rates.   Neither is there any showing of any attempt or desire on the part of the municipalities to enforce confiscatory rates.   On the contrary, the affirmative showing of the appellant is to the effect that operation under much lower rates than those voluntarily offered by the cities have produced a profit for the greater portion of the expired term of the franchises, and that no loss was sustained until January, 1919, the

beginning of confessedly severe business depression throughout the nation.

"(5) Under the terms of the franchises in question, it is clear that there was no intention to limit the cities to the sole remedy of a forfeiture of the franchises in the event of a viola- tion of the terms of the franchises by the gas company.

"From all of which it necessarily follows that the gas com- pany did not have the right to cease operations prior to the expir- ation of the term of the respective franchises and certainly not until the expiration of the 18 months' period after the declaration of peace with Germany."

The appellant broadly contends that by the holding of this court in the former opinion that there was no contract as to rates we necessarily held that the franchise did not constitute a con- tract. Appellant further contends that the provisions in the ordi- nances for the forfeiture of its rights in case of nonuser consti- tute the sole penalty for the failure of appellant to operate its plant.

[1] We neither affirm nor deny the correctness of the con- tentions of either of the parties as applied to possible situations that might have arisen or might arise between them. We decide the question before us upon the peculiar facts presented by the record. It appears that appellant is insolvent; that its plant is mortgaged in a sum at least as great as its value; that its bond- holders have been running the plant for several years; that there has been a long-continued and large operative loss; and that ap- pellant concedes that the cessation of operation will terminate its franchise rights. Under these circumstances and in view of our holding that the parties were powerless to contract as to rates, we are of the opinion that appellant had the undoubted right to cease the operation of its plant. Munn v. Illinois, 94 U. S. 113, 126, 24 L. ed. 77, 84; Brooks-Scanlon Co. v. Railroad Com., 251 U. S. 396, 40 Sup. Ct. 183, 64 L. ed. 323; P. U. R. 1920C, 579; Lyon & Hoag v. Railroad Com., 183 Cal. 145, 190 Pac. 795, 11 A. L. R. 249; Union Trust Co. v. Curtis, 182 Ind. 61, 105 N. E. 562, L. R. A. 1915A, 699; State ex rel. Little v. Dodge City M. & T. Ry. Co., 53 Kan. 329, 36 Pac. 755, 24 L. R. A. 564; Jack v. Williams (C. C.) 113 Fed. 823, affirmed 76 C. C. A. 165, 145 Fed. 281; N. Y. Trust Co. v. Portsmouth & Exeter St. Ry. Co.

(C. C.) 192 Fed. 728; State of Iowa v. Old Colony Trust Co., 131 C. C. A. 581, 215 Fed. 307, L. R. A. 1915A, 549; Gilchrist v. Waycross S. & S. Ry. Co. (D. C.) 246 Fed. 952; Central Bk. & Tr. Corp. v. Cleveland, 164 C. C. A. 446, 252 Fed. 530; Charleston-Isle of Palms Traction Co. v. Shealy (D. C.) 266 Fed. 406.

[2] While 13 days' notice of its intention to discontinue operation might ordinarily have been insufficient in point of time, yet when accompanied by the offer recited in the former opinion, we are satisfied that respondents should not be heard to complain of the short time notice.

The former opinion and the judgment therein pronounced are adhered to.

WHITING, J. (concurring specially.) I believe we should decide whether the ordinances and franchises constituted binding contracts as to all matters therein covered except rates. That they do constitute such contracts I believe to be the established law. I cannot agree that the following are material facts: That appellant is insolvent; that the plant is mortgaged; and that the bondholders have been running the plant. I do not believe appellant had an absolute right to close down its plant simply because it was losing money; upon the other hand, I do not believe that respondents had a right to have the plant run if it could only be run at a loss, thus confiscating the property. I think respondents had a right to have this gas plant placed in the hands of a receiver and operated to the end that the court might ascertain whether it could be run without a confiscation of the property. However, the showing before the court, when the receivership was applied for, was not such as to warrant the court in appointing the receiver for the purpose of ascertaining whether or not the plant could be run without loss; and the receivership was not sought for that purpose.